**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

| | |
|---|---|
| PHOENIX ENTERTAINMENT PARTNERS, LLC, a North Carolina LLC,<br><br>        Plaintiff,<br><br>v.<br><br>GEORGE AND WENDY'S TROPICAL GRILL, LLC, a Florida Limited Liability Company, ERIC LINDSEY, an individual, and KARAOKE WITH ANDREA, LLC, a Florida Limited Liability Company,<br><br>        Defendants. | Case No.: _____ |

## COMPLAINT AND JURY DEMAND

Plaintiff, Phoenix Entertainment Partners, LLC ("PEP") complains of Defendants, George and Wendy's Tropical Grill, LLC ("G&W"), Eric Lindsey ("Lindsey"), and Karaoke with Andrea, LLC ("Karaoke with Andrea") (collectively referred to as "Defendants") and for its Complaint alleges as follows:

## JURISDICTION AND VENUE

1.      This is an action for trademark infringement and unfair competition arising under §§ 32 and 43 of the Trademark Act of 1946, 15 U.S.C. §§ 1114 and 1125.   Defendants stand accused of supplying customers and patrons with karaoke accompaniment tracks marked with PEP's federally registered trademarks and providing karaoke entertainment services in connection with PEP's federally registered trademarks, all without authorization.

2.      This Court has exclusive jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the laws of the United States.

3.      This Court further has jurisdiction pursuant to 28 U.S.C § 1338(a), in that this civil action arises under an Act of Congress relating to trademarks, and, as to PEP's Lanham Act unfair competition claim, pursuant to 28 U.S.C. § 1338(b), in that the claim is joined with a substantial and related claim under the trademark laws of the United States.

4.      This Court has supplemental jurisdiction over the subject matter of PEP's state law claims pursuant to 28 U.S.C. § 1367(a), in that the claim is so related to PEP's federal claims that they form part of the same case or controversy.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), because Defendants transact business in this judicial district.

6.      This Court has personal jurisdiction over Defendants, in that Defendants conduct significant business in this State and federal judicial district, and the acts and events giving rise to this lawsuit of which the Defendants stand accused were undertaken in this State and federal judicial district.

## **THE PLAINTIFF**

7.      Plaintiff PEP is a North Carolina LLC having its principal place of business in Pineville, North Carolina.

## **THE DEFENDANTS**

8.      Defendant Karaoke with Andrea is a Florida Limited Liability Company that is owned and operated by Eric Lindsey ("Lindsey"). Lindsey is an individual that does business as a karaoke jockey and provides karaoke entertainment services at various venues via Karaoke

2

with Andrea. Karaoke with Andrea has promoted and advertised its karaoke entertainment services through its Facebook page located at https://www.facebook.com/KaraokeWithAndrea and its website at http://www.singwithandrea.com/.   Karaoke with Andrea also uses the email address eric@singwithandrea.com.   Karaoke with Andrea also advertises and promotes its performances at Defendant G&W. *See* e.g. https://www.facebook.com/KaraokeWithAndrea/videos/1148129885245248/ (June 23, 2016 video of Karaoke with Andrea at G&W); https://www.facebook.com/KaraokeWithAndrea/videos/1115484211843149/ (May 5, 2016 video of Karaoke with Andrea at G&W).  On information and belief, Lindsey resides within this judicial district.

9.    Defendant Lindsey is an individual residing in this judicial district.   On information and belief, Lindsey resides at 18601 Bartow Blvd, Fort Myers, Florida 33967.  On information and belief, Lindsey directs and controls Karaoke with Andrea.

10.    Defendant G&W is a Florida Limited Liability Company that operates an establishment called George and Wendy's Sanibel Seafood Grille and/or George and Wendy's Corner Grill, with its principal location at 2499 Periwinkle Way, Sanibel Island, Florida 33957. G&W operates a commercial establishment that provides karaoke entertainment to its patrons as an inducement for their patronage and purchase of food, drink, and other concessions. G&W promotes and advertises its karaoke entertainment services through its website located at www.sanibelseafoodgrille.com, and its Facebook page located at www.facebook.com/cornergrill.

**BACKGROUND FACTS**

11.     Karaoke is a popular form of participatory entertainment commonly found in bars and restaurants and other types of venues throughout the United States.

12.     The basic premise of a karaoke show is that the venue hosting the show provides patrons with access to a sound system and specially prepared karaoke accompaniment tracks, so that individual patrons may perform for the crowd.

13.     Generally, a "karaoke accompaniment track" is a re-recorded version of a popular song without the lead vocals synchronized to a graphical component containing a lyric display, cueing information, and other information.

14.     The graphical component is synchronized to the music and is displayed to the patron who is performing and may be displayed to the crowd as well.

15.     Venues that offer karaoke entertainment do so primarily as part of a commercial transaction wherein the venues supply their patrons with access to karaoke tracks and karaoke entertainment services in exchange for their patronage of the establishment and, they hope and expect, the purchase of food and beverages.

16.     The purchase and consumption of alcoholic beverages in connection with karaoke shows is particularly encouraged to enable patrons to overcome inhibitions against singing in public.

17.     Most venues that offer karaoke entertainment hire mobile entertainment operators to provide the karaoke tracks and the karaoke entertainment services on the venues' behalf.

18.     PEP is the owner of SOUND CHOICE®, a well-known and leading brand of karaoke accompaniment tracks that is particularly well known to commercial karaoke operations including bars, restaurants, and other venues as described above.

19.     PEP has succeeded Slep-Tone Entertainment Corporation ("Slep-Tone"), by assignment, in all interest in the Sound Choice brand.

20.     Over the course of nearly three decades in business, Slep-Tone re-recorded and released in excess of 16,500 SOUND CHOICE®-branded popular songs on special compact discs known as CD+G ("compact disc plus graphics") discs and, more recently, a subset of that catalog in another common karaoke format, MP3+G ("MP3 plus graphics") on compact discs.

21.     SOUND CHOICE®-branded karaoke tracks are wildly popular among karaoke entertainment providers, patrons, and home consumers.  According to some estimates, as corroborated by investigative data, more than half of all accompaniment tracks played at karaoke shows in the United States originated from Slep-Tone's recordings.

22.     The popularity of Sound Choice karaoke tracks derives from the market's perception that the recordings are usually the most faithful to the sound of the original recording artist, a characteristic highly valued by karaoke singers.

23.     Sound Choice karaoke tracks are also perceived by the market as providing highly accurate singing cues as part of the video display, a characteristic that is also highly valued by karaoke singers.

24.     Slep-Tone and its successor PEP have released their karaoke tracks for commercial users <u>only</u> on compact discs[1] and not on any other form of carrier (such as computer hard drives or through internet downloads).

25.     Over time, however, it has become technologically possible to create karaoke accompaniment tracks, using the Sound Choice CD-based tracks as a template, for storage on alternative media, such as computer hard drives.

---

[1] In the beginning, Slep-Tone released its karaoke tracks on cassette tapes as well, but that technology was focused on the home consumer and has since become fully obsolete.

26.     In most cases, the creation of such non-original tracks results in an imitation of a Sound Choice track, which imitation is degraded from and inferior to the original because of digital compression of the data as the format is converted from native CD+G audio and graphics to compressed audio and graphics.

27.     In a typical bar or restaurant environment, because the imitation tracks still bear the Sound Choice trademarks, when the tracks are used, the Sound Choice trademarks are broadcast or published to the general public or specific market segment to advertise the establishment's goods, products or services for the purpose of attracting customers or supporters.

28.     In a typical bar or restaurant environment, patrons are often unable to distinguish the imitation from an original, provided that the compression is not too aggressive, because the goal is to produce an acceptable digital substitute.

29.     The process outlined above is known as "media-shifting," because the information is being copied or shifted from one medium to another, and "format-shifting," because the information is being modified from one format to another.

30.     These media-shifting and format-shifting activities involve a reduction in the quality of the karaoke tracks because the formats used require the use of compressed audio in the resulting tracks.

31.     These media-shifting and format-shifting activities also usually result in the placement of the SOUND CHOICE® brand upon the resulting non-original new tracks.

32.     Easy electronic duplication of media-shifted tracks has resulted in the widespread copying and distribution of SOUND CHOICE®-branded karaoke tracks unaccompanied by the acquisition of any discs at all.

33.     This copying allows karaoke accompaniment track users to gain the benefit of using SOUND-CHOICE®-branded karaoke tracks without paying for original discs.

34.     Karaoke accompaniment track users have used the available technology to place the duplicated contents of one purchased disc on two or more computer systems for simultaneous use; to place the duplicated contents of their patrons' discs on their own computer hard drives at a show; to "swap" song files with other users; to obtain and share karaoke tracks via file-sharing sites and torrents; to purchase computer hard drives that were pre-loaded with duplicates of karaoke tracks; and to sell any original media they might have owned in the secondary market once they have media-shifted.

35.     To the extent that the Defendants have undertaken any of the activities described in the preceding paragraph, those activities have been undertaken wholly without any form of permission from or payment to PEP.

36.     Prior to instituting this lawsuit, undersigned sent a cease and desist letter to G&W via Federal Express on July 18, 2016. On August 4, 2016, undersigned received a response from counsel for G&W stating that G&W is not in the karaoke business. On August 9, 2016, undersigned sent a response letter to counsel for G&W providing photographic evidence of G&W's infringing karaoke entertainment services. Following, undersigned and counsel for G&W engaged in possible settlement discussions. On September 7, 2016, undersigned sent counsel for G&W PEP's final settlement offer. To date, undersigned has not received a response. Attached as Exhibit "A" are redacted copies of the aforementioned letters to G&W, and its counsel.

37.     Prior to instituting this lawsuit, undersigned sent a cease and desist letter to Karaoke with Andrea via Federal Express on July 19, 2016 and July 27, 2016. On August 11,

2016, undersigned sent a follow-up letter to Karaoke with Andrea via Federal Express. To date, Karaoke with Andrea has not provided any response. Attached as Exhibit "B" are redacted copies of the aforementioned letters to Karaoke with Andrea.

38.     Since receiving the cease and desist letter, Karaoke with Andrea continues to advertise karaoke entertainment services via its Facebook page.

39.     Since receiving the cease and desist letter, G&W continues to advertise karaoke entertainment services on its Events Calendar on its website.

40.     PEP conducted an in-person investigation of the karaoke services provided by Karaoke with Andrea and G&W.

## THE RIGHTS OF THE PLAINTIFF

41.     PEP is the owner of U.S. Trademark Registration No. 1,923,448, issued October 3, 1995, and properly renewed and maintained, for the trademark SOUND CHOICE, for "pre-recorded magnetic audio cassette tapes[2] and compact discs containing musical compositions and compact discs containing video related to musical compositions." Attached as Exhibit "C" is a copy of the 'Registration No. '448. Registration No. '448 is incontestable.

42.     PEP is the owner of U.S. Trademark Registration No. 2,000,725, issued September 17, 1996, and properly renewed and maintained, for a display trademark as follows:

---

[2] The references to audio cassette tapes were deleted from the registration recently when it was renewed.



for "pre-recorded magnetic audio cassette tapes[3] and compact discs containing musical compositions and compact discs containing video related to musical compositions." Attached as Exhibit "D" is a copy of Registration No. '725. Registration No. '725 is incontestable.

43.     PEP is the owner of U.S. Service Mark Registration No. 4,099,045, issued February 14, 2012, for the trademark SOUND CHOICE, for "conducting entertainment exhibitions in the nature of karaoke shows." Attached as Exhibit "E" is a copy of Registration No. '045.

44.     PEP is the owner of U.S. Service Mark Registration No. 4,099,052, issued February 14, 2012, for the same display trademark as in the preceding paragraph, for "conducting entertainment exhibitions in the nature of karaoke shows." Attached as Exhibit "F" is a copy of Registration No. '052.

45.     PEP has recorded its ownership of Registration Nos. '448, '725, '045, and '052 with the United States Patent and Trademark Office. Attached as Exhibit "G" is a copy of the assignment document. Attached as Exhibit "H" is a copy of the United States Patent and Trademark Office Notice of Recordation.

46.     PEP and its predecessor have, for the entire time its marks identified above ("the Sound Choice Marks") have been federally registered, provided the public, including the Defendants, with notice of those federal registrations through the consistent display of the symbol ® with its marks as used.

---

[3] The references to audio cassette tapes were deleted from the registration recently when it was renewed.

47.     Principally, the Sound Choice Marks are indicators of PEP as the origin of karaoke accompaniment tracks, meaning that those marks indicate that the tracks to which they are applied were made and distributed by PEP or at its direction and under its control.

48.     PEP is the owner of distinctive and protectable trade dress associated with its graphical displays ("the Trade Dress"). This distinctive and protectable trade dress includes, at a minimum, (1) the use of a particular typeface, style, and visual arrangement in displaying the lyrics; (2) the Sound Choice Marks; and (3) the use of particular styles in displaying entry cues for singers, namely a series of vanishing rectangles to indicate the cue.

49.     PEP and its predecessor have used its trade dress continuously and substantially exclusively for a period of decades.

50.     The individual and collected elements of the Trade Dress have acquired secondary meaning as an indicator of PEP and its predecessor as a source, effectively functioning as a visual trademark.

51.     The aforementioned trade dress serves to distinguish PEP's tracks from the tracks of their competitors, such that persons who are even minimally frequent consumers of karaoke entertainment services such as those provided by these Defendants are capable of identifying a particular karaoke track as originating with PEP simply by examining the Trade Dress or any significant portion thereof, whether or not the Sound Choice Marks are also displayed.

52.     The elements of the Trade Dress represent specific design choices by the Slep-Tone; they are but three of many ways to convey the information necessary to permit a karaoke singer to be appropriately supported in his or her performance.

53.     No competitor of PEP is required to use any element of the Trade Dress to accomplish the lyric cueing, and indeed all of PEP's known competitors are known to use other trade dress in accomplishing the lyric cueing.

## ACTIVITIES OF DEFENDANT, KARAOKE JOCKEY KARAOKE WITH ANDREA AND LINDSEY

54.     Karaoke with Andrea provided unauthorized karaoke services at G&W.

55.     On information and belief, Lindsey directs and controls the activities of Karaoke with Andrea.

56.     Lindsey provides karaoke jockey services on behalf of Karaoke with Andrea.

57.     Lindsey directly benefits from the activities provided by Karaoke with Andrea.

58.     Karaoke with Andrea operates a mobile entertainment business through which it supplies karaoke accompaniment tracks and provides karaoke entertainment services to their venue customers and other customers.

59.     On information and belief, Karaoke with Andrea owns at least two different karaoke setups (also known as "rigs"). Each rig includes a separate hard drive, and each hard drive contains karaoke tracks.

60.     In order to supply karaoke accompaniment tracks to a venue, Karaoke with Andrea transports the karaoke accompaniment tracks to the venue.

61.     In order to obtain the infringing karaoke tracks or to supply them to a venue, the infringing karaoke tracks are transported in commerce, using computer networks and/or public roadways.

62.     Karaoke with Andrea uses computer software to access and play the karaoke accompaniment tracks upon a request by a patron to sing the song represented by the track.

63.     A substantial number – the exact number of which will be ascertained through discovery – of the karaoke accompaniment tracks Karaoke with Andrea supplies to the venue are marked with the Sound Choice Marks and are specifically identified in the computer systems, by name or other symbol, as SOUND-CHOICE®-branded tracks.

64.     The physical tracks so marked and so supplied to the venue were not made by PEP or under its direction or control.

65.     Karaoke with Andrea did not have PEP's permission to make any karaoke accompaniment tracks with the Sound Choice Marks or to make any karaoke accompaniment tracks marked with the Sound Choice Marks.

66.     The karaoke accompaniment tracks that Karaoke with Andrea supplied to the venues and that were marked with the Sound Choice Marks were and are counterfeit.

67.     Karaoke with Andrea is and was paid by each of their venue customers to supply the karaoke accompaniment tracks so marked.

68.     In order to supply karaoke entertainment services to a venue, Karaoke with Andrea prepares and executes a karaoke show, by acquiring, or acquiring access to, appropriate sound equipment for playing karaoke accompaniment tracks; connecting the sound equipment to a source for karaoke accompaniment tracks (to wit, the tracks supplied as indicated above); causing selected karaoke accompaniment tracks to be played over the sound equipment; controlling the organization and flow of the performances; and acting as the on-microphone emcee of the show.

69.     During the course of supplying these karaoke entertainment services, Karaoke with Andrea repeatedly displays the Sound Choice Marks in connection with the services.

70.     Because of the well-known association of the Sound Choice Marks with karaoke entertainment services, the display of the Sound Choice Marks in connection with the services, regardless of the particular song being played, acts as a general advertisement for the services as well as an indicator of the quality of the services being provided.

71.     Because of the frequent, repeated display of the Sound Choice Marks across numerous instances of widely disparate songs, patrons and other consumers of Karaoke with Andrea's karaoke entertainment services are likely to view the display of the Sound Choice Marks as an indicator of the affiliation, connection, or association of Karaoke with Andrea and G&W with PEP, or of PEP's sponsorship or approval of their services and related commercial activities, rather than merely as the creator of the underlying communicative content of any particular song being performed.

72.     The foregoing activities undertaken in connection with the Sound Choice Marks were undertaken in derogation of PEP's rights in the Sound Choice Marks.

73.     Consumers of the Karaoke with Andrea's goods and services are likely to be confused regarding the origin or sponsorship of the goods in use and regarding the affiliation or connection of Karaoke with Andrea and of G&W with Phoenix, based on their mistaken belief that the goods being supplied were made by PEP and that the services being provided are provided with PEP's knowledge and approval

74.     As a result of those activities, PEP has been damaged through the loss of revenues associated with the sale or licensing of legitimate goods and services, as well as through the loss of PEP's ability to control the quality of goods marked and services provided in connection with the Sound Choice Marks.

75.     When played as intended using appropriate software, the karaoke tracks performed at G&W caused the Sound Choice Marks and the Trade Dress to be displayed as part of the associated video component of the karaoke tracks they represent.

76.     PEP did not authorize the karaoke performances performed at G&W or the display of the Sound Choice Marks and the Trade Dress in connection with Karaoke with Andrea's provision of karaoke entertainment services at G&W.

77.     As such, the placement of the Sound Choice Marks and the Trade Dress upon the karaoke tracks performed at G&W and the display of the Sound Choice Marks and the Trade Dress while Karaoke with Andrea was providing karaoke entertainment services at G&W is a false designation of the origin of those computer files, and of those services.

78.     Additionally, even if a particular counterfeit track is not played at a given show, the act of making that counterfeit track available for play at a show is a commercial act from which Karaoke with Andrea and G&W derived an economic advantage.

79.     Karaoke with Andrea is not a certified Sound Choice Karaoke Jockey.

80.     Karaoke with Andrea has known that the creation and use of karaoke accompaniment tracks or computer files representative of karaoke accompaniment tracks that bear the Sound Choice Marks and/or the Trade Dress is not authorized.

## ACTIVITIES OF DEFENDANT G&W

81.     G&W has the right and ability to control whether the specific persons providing services at its establishment use authentic or counterfeit materials to provide services.

82.     PEP has provided notice to G&W of PEP's rights. This notice came *inter alia* by way of the letters in Exhibit "A."

83.    G&W had actual knowledge of the infringing and counterfeit nature of the karaoke materials in use at its establishment.

84.    G&W advertises karaoke services at its venue. *See* Exhibit "I".

85.    G&W controls when karaoke services are provided at its venue.

86.    G&W controls who performs karaoke services at its venue.

87.    G&W controls where karaoke services are performed at its venue.

88.    G&W derives a benefit from performing karaoke services at its venue.  This benefit includes, on information and belief, food and alcohol sales.

89.    Karaoke with Andrea accepted the undertaking of providing karaoke services at G&W's venue for G&S's benefit and actually regularly performed the services as requested by G&W, according to terms defined by G&W.

90.    In the alternative, G&W was willfully blind to the infringing activities occurring in its establishment and took no action to ascertain whether any infringement was occurring or to stop that infringement.

91.    Despite that knowledge, whether actual or constructive, G&W continued to participate in a scheme of infringement and continued to receive the financial benefit of attracting food-and beverage-purchasing patrons to its establishment based on the availability of the infringing karaoke entertainment services Karaoke with Andrea provided there.

92.    G&W advertised karaoke entertainment services, which services included the unlawful use of the Sound Choice Marks.

93.    G&W is secondarily liable for the acts of trademark infringement directly engaged in by its agents, including Karaoke with Andrea, on its respective premises or for its benefit.

## DAMAGES

94.     G&W'S gain from permitting unauthorized karaoke entertainment services in its establishment has damaged PEP.

95.     By using non-authorized karaoke services, Defendants and their agents have unfairly competed with PEP's legitimate customers.

96.     By refusing to require authorized karaoke performances, Defendants have deprived PEP of revenue by discouraging legitimate operators from investing in legitimate Sound Choice branded products.

97.     By exerting illegitimate and unfair pressure upon the market for karaoke services in this State and judicial district through the use of pirated material belonging to PEP, Defendants have cost PEP in excess of $100,000.00 in revenue from legitimate sources crowded out of the market.

## FIRST CLAIM FOR RELIEF
## TRADEMARK AND TRADE DRESS INFRINGEMENT
## AGAINST DEFENDANT G&W (Lanham Act)

98.     PEP repeats and incorporates by reference herein its allegations contained in paragraphs 1 through 97 above.

99.     G&W knowingly participated in a scheme of trademark infringement carried out by Karaoke with Andrea, through which the Sound Choice Marks and the Trade Dress were repeatedly infringed.

100.     G&W is contributorily liable for Karaoke with Andrea acts of trademark infringement based upon G&W's knowing participation in Karaoke with Andrea's scheme.

101.    In the alternative, G&W is vicariously liable for Karaoke with Andrea's acts of trademark infringement because those acts were carried out in connection with an actual or apparent partnership between G&W and Karaoke with Andrea.

102.    Through Karaoke with Andrea's actions, G&W used, permitted the use of, controlled the use of, and knowingly directly benefited from the use of a reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress in connection with the provision of services including karaoke services, by manufacturing or acquiring the reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress, and by displaying or permitting the displaying of the reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress during the provision of those services.

103.    The use of the Sound Choice Marks and the Trade Dress at G&W were "in commerce" within the meaning of the Trademark Act of 1946 as amended.

104.    PEP did not license G&W to manufacture or acquire reproductions, counterfeits, or copies of, or to use, the Sound Choice Marks or the Trade Dress in connection with the provision of their services.

105.    Use of the Sound Choice Marks and the Trade Dress by G&W in this manner is likely to cause confusion, or to cause mistake, or to deceive its customers and patrons into believing that its services are being provided with the authorization of PEP and that its music libraries contain bona fide Sound Choice accompaniment tracks.

106.    The acts of G&W were willful, knowing, and intentional.

107.    PEP has been damaged by the infringing activities of G&W.

108.    Unless enjoined by the Court, G&W's infringing activities as described above will continue unabated and will continue to cause harm to PEP.

## SECOND CLAIM FOR RELIEF
## UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)
## AGAINST DEFENDANT G&W

109.    PEP repeats and incorporates by reference herein its allegations contained in paragraphs 1 through 97 above.

110.    G&W knowingly participated in a scheme of unfair competition in the form of the false designation of origin of goods and services by Karaoke with Andrea, through which the Sound Choice Marks and the Trade Dress were repeatedly used, falsely, to designate PEP as the origin of goods and services PEP did not make or authorize.

111.    G&W is contributorily liable for Karaoke with Andrea's acts of unfair competition based upon G&W's knowing participation in Karaoke with Andrea's scheme.

112.    In the alternative, G&S is vicariously liable for Karaoke with Andrea's acts of unfair competition because those acts were carried out in connection with an actual or apparent partnership between G&W and Karaoke with Andrea.

113.    G&W permitted unauthorized SOUND CHOICE®-branded accompaniment tracks to be performed at G&W and derived benefits from doing so. On each occasion when G&W permitted an unauthorized SOUND CHOICE®-branded accompaniment track to be played during a karaoke show, G&W permitted the display of the Sound Choice marks in connection with karaoke entertainment services.

114.    The display of the Sound Choice marks is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that PEP was the origin of the goods in use or that PEP sponsored or approved G&W's services and commercial activities.

115.    The display of the Sound Choice marks is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that to the works being performed were sold by PEP and were authentic Sound Choice tracks, when they were not authentic.

116.    G&W's use of the Sound Choice marks in this fashion would have inured to the benefit of PEP if it had required authorized Sound Choice tracks be performed instead of permitting the performance of counterfeit tracks, in that PEP would have received revenue from such sales.

117.    Because PEP has been denied this revenue, it has been damaged by G&W's activities.

118.    The display of these false designations of origin is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the pirated tracks are legitimate, authorized, and authentic materials that were acquired in a legitimate manner.

119.    G&W's use of the false designations of origin in this fashion damages PEP by enabling G&W to provide karaoke entertainment services at a lower cost than persons who acquire those materials legitimately, including PEP's legitimate customers.

120.    The consequential denial of revenue from a legitimate market for PEP's customers' services prevents PEP's customers from making purchases of material from PEP and is thus a denial of revenue to PEP.

121.    Because PEP has been denied this revenue, it has been damaged by G&W permitting karaoke services with false designations of origin.

122.    Unless enjoined by the Court, G&W's unfair competition activities as described above will continue unabated and will continue to cause harm to PEP.

### THIRD CLAIM FOR RELIEF
### VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA) Fla. Stat. §501.201, *et seq.* AGAINST DEFENDANT G&W

123.    PEP repeats and incorporates by reference herein its allegations contained in paragraphs 1 through 97 above.

124.    G&W utilized Karaoke with Andrea to provide commercial karaoke services at its establishment, and it had the right and ability to control its use of authorized or counterfeit materials for said commercial purposes.

125.    At the times complained of herein, G&W permitted Karaoke with Andrea to engage in acts of infringement of the Sound Choice marks and the Trade Dress, in derogation of PEP's common law and statutory rights in those marks.

126.    G&W derived economic benefit from the unauthorized karaoke services provided at its establishment.

127.    G&W permitting acts of infringement constitute unfair or deceptive acts or practices within the meaning of Fla. Stat. § 501.204(1) (2009).

128.    G&W enabling acts of infringement cause likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by PEP.

129.    As a direct and proximate result of each act of infringement at G&W and its encouragement thereof, PEP has suffered a pecuniary loss, including the loss of revenue associated with sales or distribution of compact discs to karaoke jockeys, commensurate with the demand for the contents of those discs, which revenue would have been received but for the acts in creating or acquiring counterfeits of SOUND CHOICE®-branded accompaniment tracks.

20

130.    As such, PEP has been damaged and is likely to be further damaged by the deceptive trade practice of G&W, within the meaning of Fla. Stat. § 501.204(1) (2009).

131.    Unless enjoined by the Court, G&W's unfair competition activities as described above will continue unabated and will continue to cause harm to PEP.

**FOURTH CLAIM FOR RELIEF**
**COMMON LAW UNFAIR COMPETITION**
**AGAINST DEFENDANT G&W**

132.    PEP repeats and incorporates by reference herein its allegations contained in paragraphs 1 through 97 above.

133.    G&W permitted unauthorized SOUND CHOICE®-branded accompaniment tracks to be performed at G&W and derived benefits from doing so.   On each occasion when G&W permitted a SOUND CHOICE®-branded accompaniment track to be played during a karaoke show, G&W permitted the display of the Sound Choice marks in connection with karaoke entertainment services.

134.    The display of the Sound Choice marks is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that PEP sponsored or approved G&W's services and commercial activities.

135.    The display of the Sound Choice marks is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the works being performed were authorized Sound Choice works when they were not.

136.    G&W's use of the Sound Choice marks in this fashion would have inured to the benefit of PEP if it had required its karaoke providers utilize legitimately acquired genuine

21

Sound Choice discs instead of counterfeiting them or acquiring counterfeit copies, in that PEP would have received revenue from such sales.

137.   Because PEP has been denied this revenue, it has been damaged by G&W's uses.

138.   The display of these false designations of origin is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the pirated tracks are legitimate, authorized, and authentic materials that were acquired in a legitimate manner.

139.   G&W's use of the false designations or origin in this fashion damages PEP by enabling G&W to provide karaoke entertainment services at a lower cost than persons who acquired those materials legitimately, including PEP's legitimate customers.

140.   The consequential denial of revenue from a legitimate market for PEP's customers' services prevents PEP's customers from making purchases of material from PEP and is thus denial of revenue to PEP.

141.   Because PEP has been denied this revenue, it has been damaged by G&W's false designations.

142.   Unless enjoined by the Court, G&W's unfair competition activities as described above will continue unabated and will continue to cause harm to PEP.

### FIFTH CLAIM FOR RELIEF
### TRADEMARK AND TRADE DRESS INFRINGEMENT
### AGAINST DEFENDANTS LINDSEY AND KARAOKE WITH ANDREA (Lanham Act)

143.   PEP repeats and incorporates by reference herein its allegations contained in paragraphs 1 through 97 above.

144.   Karaoke with Andrea used and knowingly directly benefited from the use of a reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress in connection

with the provision of services including karaoke services, by manufacturing or acquiring the reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress, and by displaying the reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress during the provision of those services.

145.    Karaoke with Andrea's use of the Sound Choice Marks and the Trade Dress was "in commerce" within the meaning of the Trademark Act of 1946 as amended.

146.    PEP did not license Karaoke with Andrea to manufacture or acquire reproductions, counterfeits, or copies of, or to use, the Sound Choice Marks or the Trade Dress in connection with the provision of her services.

147.    Use of the Sound Choice Marks and the Trade Dress by Karaoke with Andrea in this manner is likely to cause confusion, or to cause mistake, or to deceive its customers and patrons into believing that her services are being provided with the authorization of PEP and that her music libraries contain bona fide Sound Choice accompaniment tracks.

148.    On information and belief, the acts of Karaoke with Andrea were willful, knowing, and intentional.

149.    PEP has been damaged by the infringing activities of Karaoke with Andrea.

150.    Lindsey is liable for the acts complained of in this count based *inter alia* on his direction and control of Karaoke with Andrea.

151.    Unless enjoined by the Court, Lindsey's and Karaoke with Andrea's infringing activities as described above will continue unabated and will continue to cause harm to PEP.

**SIXTH CLAIM FOR RELIEF**
**UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)**
**AGAINST DEFENDANTS LINDSEY AND KARAOKE WITH ANDREA**

152.    PEP repeats and incorporates by reference herein its allegations contained in paragraphs 1 through 97 above.

153.    On each occasion Karaoke with Andrea caused or permitted an unauthorized counterfeit duplicate of a PEP accompaniment track to be played during a karaoke show at a given establishment, the Sound Choice Marks and the Trade Dress were displayed in connection with Karaoke with Andrea's karaoke services.

154.    The display of the Sound Choice Marks and the Trade Dress is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that PEP manufactured the karaoke accompaniment tracks in use at the establishment or otherwise sponsored or approved Karaoke with Andrea's karaoke entertainment services.

155.    The display of the Sound Choice Marks and the Trade Dress is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the tracks being performed were sold by PEP and purchased or otherwise licensed by Karaoke with Andrea.

156.    Karaoke with Andrea's use of PEP's marks and trade dress in this fashion or in a more appropriate fashion would have inured to the benefit of PEP if Karaoke with Andrea had legitimately acquired bona fide original media instead of counterfeiting them or acquiring counterfeit copies, in that PEP would have received revenue from such sales.

157.    Because PEP has been denied this revenue, it has been damaged by Karaoke with Andrea's uses.

158.    On each occasion when Karaoke with Andrea caused or permitted an accompaniment track pirated from a manufacturer other than PEP to be played during a karaoke

show, the words, names, and symbols of the other manufacturer were displayed in connection with Karaoke with Andrea's karaoke entertainment services.

159. The display of these false designations of origin is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the pirated tracks are legitimate, authorized, and authentic materials that Karaoke with Andrea acquired in a legitimate manner.

160. The display of the false designations of origin is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the tracks being performed were sold by those manufacturers and purchased by Karaoke with Andrea.

161. Karaoke with Andrea's use of the false designations of origin in this fashion damages PEP by enabling G&W to provide karaoke services at a lower cost than persons who acquire those materials legitimately, including PEP's legitimate customers, can provide or obtain them.

162. The consequential denial of revenue from a legitimate market for PEP's customers' services prevents PEP's customers from making purchases of material from PEP and is thus a denial of revenue to PEP.

163. Because PEP has been denied this revenue, it has been damaged by Karaoke with Andrea's false designations of origin relating to other manufacturers.

164. Lindsey is liable for the acts complained of in this count based *inter alia* on his direction and control of Karaoke with Andrea.

165.   Unless enjoined by the Court, Lindsey's and Karaoke with Andrea's unfair competition activities as described above will continue unabated and will continue to cause harm to PEP.

**SEVENTH CLAIM FOR RELIEF**
**VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA) Fla. Stat. §501.201, *et seq.* AGAINST DEFENDANTS LINDSEY AND KARAOKE WITH ANDREA**

166.   PEP repeats and incorporates by reference herein its allegations contained in paragraphs 1 through 97 above.

167.   Karaoke with Andrea used and knowingly directly benefited from the use of a reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress in connection with the provision of services including karaoke services, by manufacturing or acquiring the reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress, and by displaying the reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress during the provision of those services.

168.   G&W derived an economic benefit.

169.   Karaoke with Andrea's acts of infringement constitute unfair or deceptive acts or practices within the meaning of Fla. Stat. § 501.204(1) (2009).

170.   Karaoke with Andrea's acts of infringement cause likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by PEP.

171.   As a direct and proximate result of each of Karaoke with Andrea's acts of infringement PEP has suffered a pecuniary loss, including the loss of revenue associated with sales or distribution of compact discs to karaoke jockeys, commensurate with the demand for the contents of those discs, which revenue would have been received but for Karaoke with Andrea's acts in creating or acquiring counterfeits of SOUND CHOICE®-branded accompaniment tracks.

172.    Lindsey is liable for the acts complained of in this count based *inter alia* on his direction and control of Karaoke with Andrea.

173.    Unless enjoined by the Court, Lindsey's and Karaoke with Andrea's unfair competition activities as described above will continue unabated and will continue to cause harm to PEP.

174.    PEP is entitled to its attorneys' fees and costs pursuant to Fla. Stat. §501.2105.

### EIGHTH CLAIM FOR RELIEF
### COMMON LAW UNFAIR COMPETITION
### AGAINST DEFENDANTS LINDSEY AND KARAOKE WITH ANDREA

175.    PEP repeats and incorporates by reference herein its allegations contained in paragraphs 1 through 97 above.

176.    Karaoke with Andrea used and knowingly directly benefited from the use of a reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress in connection with the provision of services including karaoke services, by manufacturing or acquiring the reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress, and by displaying the reproduction, counterfeit, or copy of the Sound Choice Marks or the Trade Dress during the provision of those services.

177.    Karaoke with Andrea's use of the Sound Choice Marks and the Trade Dress is business conduct which is contrary to honest practice in commercial matters.

178.    PEP did not license Karaoke with Andrea to make, acquire, or use reproductions, counterfeits, or copies, or to use the Sound Choice Marks or the Trade Dress in connection with the services provided at its commercial establishment.

179.    Use of the Sound Choice Marks and the Trade Dress in the manner attributable to Karaoke with Andrea is likely to cause confusion, or to cause mistake, or to deceive customers at

the venue in which Karaoke with Andrea performs into falsely believing that the services those customers are receiving are being provided with the authorization of PEP using bona fide, legitimate, authorized karaoke accompaniment tracks.

180.    On information and belief, Karaoke with Andrea's acts are willful and knowing.

181.    PEP has been damaged by the infringing activities of Karaoke with Andrea.

182.    Lindsey is liable for the acts complained of in this count based *inter alia* on his direction and control of Karaoke with Andrea.

183.    Unless enjoined by the Court, Lindsey's and Karaoke with Andrea's infringing activities as described above will continue unabated and will continue to cause harm to PEP.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, PEP, prays for judgment against the Defendants, and that the Court:

A.    Find that Defendants committed acts of infringement, including but not limited to counterfeiting, of the federally registered Sound Choice Marks and of the Trade Dress;

B.    Find that Defendants engaged in unfair competition detrimental to PEP in violation of 15 U.S.C. § 1125(a);

C.    Enter judgment against Defendants and in favor of PEP on all applicable counts;

D.    Find the Defendants' activities were in all respects conducted willfully and for profit;

E.    Award to PEP Defendants' profits and the damages sustained by PEP because of Defendants' conduct in infringing the Sound Choice Marks, the Trade Dress, or both, or, in the alternative, statutory damages per trademark infringed by counterfeiting in an amount up to Two Million and no/100 Dollars ($2,000,000.00) per mark infringed and in any event in an amount

not less than Twenty Five Thousand and no/100 Dollars ($25,000.00) for each karaoke system operated by Defendants, and not less than Fifty Thousand and no/100 Dollars ($50,000.00) for each establishment in which the infringement occurred;

F.     Award to PEP Defendants' profits and the damages sustained by PEP because of the Defendants' acts of unfair competition under 15 U.S.C. § 1125(a), and in any event in an amount not less than $25,000.00 for each karaoke system operated by Defendants, and not less than $50,000.00 for each establishment in which the infringement occurred;

G.     Award to PEP treble, punitive, or otherwise enhanced damages, as available, for Defendants' acts of willful infringement;

H.     Order all computer disks, drives, or other media belonging to Defendants, which media contain counterfeits of PEP's marks, or of marks belonging to other manufacturers, to be delivered up for destruction;

I.     Grant PEP preliminary and permanent injunctive relief against further infringement of the Sound Choice Marks by Defendants;

J.     Grant PEP preliminary and permanent injunctive relief against further false designations of origin by Defendants with respect to words, names, and symbols associated with other manufacturers;

K.     Award PEP its costs suit and attorney fees, to the extent not awarded above; and

L.     Grant PEP such other and further relief as justice may require.

## JURY DEMAND

PEP demands trial by jury on all issues so triable.

Date: November 28, 2016

Respectfully submitted,

/s/

Woodrow H. Pollack
Trial Counsel
Florida Bar No. 026802
**GRAYROBINSON, P.A.**
401 East Jackson Street, Suite 2700
Tampa, Florida  33602
(813) 273-5000
(813) 273-5145 (facsimile)
woodrow.pollack@gray-robinson.com
*Attorney for Plaintiff*