UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

PHOENIX ENTERTAINMENT
PARTNERS, LLC, a North Carolina
LLC,

      Plaintiff,

v.                                          Case No:   2:16-cv-852-FtM-99MRM

GEORGE AND WENDY'S
TROPICAL GRILL, LLC, ERIC
LINDSEY and KARAOKE WITH
ANDREA, LLC,

      Defendants.
_____/

## OPINION AND ORDER[1]

      This matter comes before the Court on Defendants Eric Lindsey ("Lindsey") and Karaoke with Andrea, LLC's ("Karaoke with Andrea") Motion to Dismiss (Doc. #18) filed on December 28, 2016, to which plaintiff Phoenix Entertainment Partners, LLC ("Plaintiff") filed a response on January 24, 2017 (Doc. #26).  Also before the Court is Defendants George and Wendy's Tropical Grill, LLC's ("G&W") Motion to Dismiss (Doc. #25) filed on January 17, 2017, to which Plaintiff filed a response on February 13, 2017 (Doc. #30). For the reasons set forth below, both motions are denied.

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

**Background**

On November 19, 2016, Plaintiff filed an eight-count Complaint, generally alleging trademark infringement and unfair competition. (Doc. #1). Plaintiff owns Sound Choice, a brand that carries and provides karaoke accompaniment tracks to bars, restaurants and other such establishments. (Doc. #1 at ¶ 18). When Plaintiff eventually succeeded a business named "Slep-Tone Entertainment Corporation" ("Slep-Tone"), it acquired rights over Sound Choice through assignment of interest. (*Id.* at ¶ 19). When Slep-Tone possessed ownership of Sound Choice, it re-recorded and released an excess of 16,500 popular songs on special compact discs that included graphics ("CD+G" discs). (*Id.* at ¶ 20). More recently, Slep-Tone released another subset of karaoke in MP3 format that also include graphics ("MP3+G"). (*Id.*). Sound Choice prides itself on its karaoke recordings, allegedly known for its accurate singing cues and being the most faithful to the sound of the original recording artist. (*Id.* at ¶¶ 22-23). Both Slep-Tone and Plaintiff have released karaoke tracks to commercial users only on compact discs and not on any other form of carrier (*e.g.*, computer hard drives, internet downloads, etc.). (*Id.* at ¶ 24).

Given modern technological advances, it is now possible to create karaoke accompaniment tracks using the Sound Choice CD based tracks as a template for storage on alternative media (*e.g.*, computer hard drives). (Doc. #1 at ¶ 25). The creation of these tracks produce an imitation that is inferior to the original due to digital compression. (*Id.* at ¶ 26). Digital compression occurs where the original CD+G files are compressed into audio plus graphics files. (*Id.*). Although the imitation is one of digital compression, most would be unable to detect variation in the sound quality. (*Id.* at ¶ 28). The aforementioned process is also known as "media-shifting" or "format-shifting"

because information is being copied and shifted from one medium or format to another. (*Id.* at ¶ 29). Owners of karaoke establishments find complacent ease in using a media-shifted track as it allows them to both quickly access and store the files on a hard drive without inserting a disc. (*Id.* at ¶ 32). As an additional perk, storage of a karaoke file on a hard drive prevents users' discs from excessive wear, damage, loss, or theft.

The easy duplication of tracks now means users have access to a widespread distribution of media-shifted karaoke tracks without ownership of any discs. (*Id.* at ¶ 32). Such widespread distribution means users gain a benefit without supplying payment for the original discs to companies like Sound Choice. (*Id.* at ¶ 33).

Plaintiff possesses ownership of four trademarks bearing the name SOUND CHOICE. *See* (Doc. #1 at Exhibits C, D, E, F, G, H). In particular, Plaintiff asserts protection over its distinctive trade dress, which includes, amongst other things: "(1) the use of a particular typeface, style, and visual arrangement in displaying the lyrics; (2) the Sound Choice Marks; and (3) the use of particular styles in displaying entry cues for singers, namely a series of vanishing rectangles to indicate the cue." (*Id.* at ¶ 48).

Plaintiff alleges that Karaoke with Andrea and Lindsey operates a mobile entertainment business to provide karaoke entertainment services to certain venues. (Doc. #1 at ¶ 58). Lindsey is a karaoke jockey and provides karaoke entertainment service at various venues on behalf of Karaoke with Andrea. (Doc. #1 at ¶ 56). Defendant G&W, a restaurant and bar, is one such venue. Lindsey both promotes and advertises his services through various Facebook pages. (*Id.* at ¶ 8). Karaoke with Andrea owns at least two different karaoke setups, containing a hard drive, and each hard drive contains karaoke tracks. (*Id.* at ¶ 59). A substantial number of the karaoke entertainment tracks

that Karaoke with Andrea supplies to the venue are marked with the Sound Choice Marks, even though it did not have Plaintiff's permission to make any tracks or use any tracks marked with Sound Choice Marks. (*Id.* at ¶¶ 63-65). Because of these activities, Plaintiff alleges that it has been damaged through losing revenue associated with the sale or licensing of legitimate goods and services, and their loss of ability to control the quality of goods marked and services provided in connection with the Sound Choice Marks. (*Id.* at ¶ 74).

Regarding Defendant G&W, Plaintiff alleges that G&W had the right and ability to control whether the specific persons providing services at its establishment use authentic or counterfeit materials to provide services. (Doc. #1 at ¶ 81). Plaintiff alleges that G&W knew the infringing and counterfeit nature of the karaoke materials used at its establishment. (*Id.* at ¶ 83). G&W derives benefit from performing karaoke services at its venue, namely, food and alcohol sales. (*Id.* at ¶ 88). Plaintiff alleges that G&W is secondarily liable for the acts of trademark infringement directly engaged in by its agents, Lindsey and Karaoke with Andrea, on its premises for its benefit. (*Id.* at ¶ 93).

Plaintiff asserts these eight counts against Defendants: Count I—Trademark and Trade Dress Infringement Against Defendant G&W; Count II—Unfair Competition under 15 U.S.C. § 1125(a) against Defendant G&W; Count III—Violation of the Florida Deceptive and Unfair Trade Practices Act (FDUPTA) Against Defendant G&W; Count IV—Common Law Unfair Competition Against Defendant G&W; Count V—Trademark and Trade Dress Infringement Against Defendants Lindsey and Karaoke with Andrea; Count VI—Unfair Competition Against Defendants Lindsey and Karaoke with Andrea; Count VII—Violation of the Florida Deceptive and Unfair Trade Practices Act (FDUPTA)

Against Defendants Lindsey and Karaoke with Andrea; and Count VIII—Common Law Unfair Competition Against Defendants Lindsey and Karaoke with Andrea.  (Doc. #1). Defendants now move to dismiss, alleging failure to state a claim. In response, Plaintiff re-asserts its claims for trademark and trade dress infringement, unfair competition, and FDUPTA were properly pled.

### Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a [c]omplaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  The issue in resolving such a motion is not whether the non-movant will ultimately prevail, but whether the non-movant is entitled to offer evidence to support his claims.  *See id.* at 678-79.

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679 (citations omitted).  Although legal conclusions can provide the framework for a complaint, factual allegations must support all claims.  *See id.*  Based on these allegations, the court will determine whether the plaintiff's pleadings plausibly give rise to an entitlement to relief.  *See id.* at 678-79.  Legal conclusions couched as factual allegations are not sufficient, nor are unwarranted inferences, unreasonable conclusions, or arguments.  *See Twombly*, 550 U.S. at 555.

Rule 8 of the Federal Rules of Civil Procedure provides parallel pleading requirements that also must be satisfied. Under this rule, "a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Labels, conclusions, and formulaic recitations of the elements of a cause of action are not sufficient. *See id.* at 678-79. Mere naked assertions are also inadequate. *See id.*

## Discussion

**I.  Claims Against Defendants Lindsey and Karaoke with Andrea (Counts V-VII)**

Plaintiff alleges several causes of action against Lindsey and Karaoke with Andrea, including claims for trademark and trade dress infringement, unfair competition, and deceptive and unfair trade practices. (Doc. #1, Counts V-VII). In response, Lindsey and Karaoke with Andrea move to dismiss, contending: (i) Plaintiff is bringing copyright claims masked as trademark violations; (ii) a failure to plead creation of a new good and likelihood of consumer confusion; (iii) that the purported trade dress is functional; (iv) the allegations supporting unfair competition fail because Defendants were not the proximate cause of Plaintiff's damages; and (v) that FDUTPA does not apply because Plaintiff was not injured in the course of trade or commerce with Karaoke with Andrea. In opposition, Plaintiff re-asserts its claim for unauthorized distribution and use of its Sound Choice-branded counterfeit tracks, trademarks, and trade dress in connection with Lindsey and Karaoke with Andrea's karaoke services. The Court will now address each of these arguments in turn.

Case 2:16-cv-00852-UA-MRM   Document 34   Filed 03/06/17   Page 7 of 14 PageID 286

### A. Count V – Trademark and Trade Dress Infringement

#### i. Trademark Claims Masked as Copyright Claims

Lindsey and Karaoke with Andrea argue that trademark law simply does not fit this case, and discusses the distinction between trademark and copyright law, citing and discussing a landmark opinion in intellectual property law, *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), and *Dastar*'s applicability to a recent Seventh Circuit opinion, *Phoenix Entm't Partners v. Rumsey*, 829 F.3d 817 (7th Cir. 2016). In essence, Lindsey and Karaoke with Andrea argue that the core of Plaintiff's claims is the substance of copyright law, not trademark law. Lindsey and Karaoke with Andrea cautions the Court against extending copyright protection over Plaintiff's trademarks and trade dress.

Plaintiff argues to the contrary, contending that Plaintiff is the producer of the tangible goods offered for sale and consequently, serves as the "origin of goods" for purposes of the Lanham Act. Although Lindsey nor Karaoke with Andrea hold themselves out as being sponsored by or affiliated with Plaintiff, Plaintiff argues that the Defendants play a sufficient amount of songs branded with the Sound Choice marks and trade dress. This display potentially confuses consumers into thinking Lindsey and Karaoke with Andrea have paid for the Sound Choice-branded tracks associated with its services. The Court agrees with Plaintiff. *See Phoenix Entertainment Partners, LLC v. Aguayo et al.*, 2:16-cv-449 (Doc. #36, Oct. 23, 2016).

In *Dastar*, the Court was presented with both copyright and Lanham Act violations. The heart of the dispute centered on General Dwight D. Eisenhower's World War II book, *Crusade in Europe*, the copyright and exclusive television rights of which were granted

7

exclusively to Twentieth Century Fox Film Corporation ("Fox"). *Dastar*, 539 U.S. at 23. Fox never renewed the copyright on the television series which culminated in the work being left in the public domain. *Id.* Petitioner Dastar later released a video set by the name of "World War II Campaigns in Europe." *Id.* The video set appropriated tapes from the original Crusade television series that Fox produced. *Id.* Respondents' claim alleged that Dastar made a "'false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which…is likely to cause confusion … as to the origin … of his or her goods.'" *Id.* (internal citation omitted). Thereafter, the Court in *Dastar* addressed what constituted the origin of Dastar's product and consequently what the Lanham Act meant by the "origin of goods." *Id.* at 29-38. The Court tread carefully in its analysis as to avoid blurring the lines between copyright and trademark law. Ultimately, the Court concluded that the phrase "origin of goods" under section 43(a) of the Lanham Act refers "to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Id.* at 37.

Lindsey and Karaoke with Andrea tie *Dastar* to the Seventh Circuit opinion in *Phoenix Entm't Partners v. Rumsey*, 829 F.3d 817 (7th Cir. 2016). Defendants pick upon the latter as it addresses similar issues the ones posed in the case at hand. In *Phoenix Entm't Partners*, Slep-Tone and Phoenix Entertainment Partners, collectively, alleged that defendants, a pub and its owner, committed trademark infringement by digitally passing off unauthorized digital copies of Slep-Tone's karaoke tracks as genuine Slep-Tone tracks. *Phoenix Entm't Partners*, 829 F.3d at 819. The Seventh Circuit Court reasoned that the root of plaintiff's complaint stemmed from unauthorized copying and relied on

*Dastar* as support.  *Id.*  To pinpoint whether plaintiff brought an actionable claim under the Lanham Act, the Seventh Circuit asked what is the tangible good and "whether the unauthorized use of the plaintiff's marks (including trade dress) might cause consumers to be confused about who produced that good. Or, is the real confusion, if any, about the source of the creative [content] contained within that good?"  *Id.*  If the latter, the action was not brought under the Lanham Act.  *Id.*  The Court in *Phoenix Entm't Partners* concluded that plaintiff's action trespassed upon copyright law and was not actionable under the Lanham Act.  *Id.*

Here, the Court does not find the Seventh Circuit opinion persuasive.  Rather, this Court will follow precedent set by the Eleventh Circuit.  *See generally Slep-Tone Entm't Corp. v. Johnson*, 518 F. App'x 815 (11th Cir. 2013) (where federal appellate court affirmed damages awarded to plaintiff Slep-Tone in an action against defendant bar and ruled it an abuse of discretion to deny producer an injunction against bars).  Plaintiff is the successor producer of the tangible good, the CD+G discs, that are sold to various consumers, including karaoke jockeys and establishments.  Only Plaintiff's authorized consumers can media or format-shift the content within such CD+G discs. Thus, any unauthorized consumer playing illicit media or format-shifted songs during karaoke risk having Sound Choice's trade dress appear on screen.  Although the sound quality may not be discernible to those listening, it gives the impression that Plaintiff has authorized Lindsey and/or Karaoke with Andrea to both play the song and display Sound Choice's trademarks and trade dress.

At this stage in the proceedings, the Court finds that the unauthorized display of Plaintiff's marks in combination with potential consumer confusion sufficiently alleges a

cause of action under the Lanham Act. See *Iqbal*, 556 U.S. at 678 (an allegation need only be plausible, not probable, to survive a motion to dismiss); *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 412 ("[t]he likelihood of confusion test is a fact intensive analysis that ordinarily does not lend itself to a motion to dismiss"). While it is often difficult to delineate between copyright law and trademark law, this Court draws Lindsey and Karaoke with Andrea's attention to the fact that there is no allegation concerning infringement based on the content of the karaoke tracks. See *Slep-Tone Entm't Corp.*, 518 F. App'x at n.1. The Court denies dismissal of Plaintiff's claims for trademark and trade dress infringement on this basis.

### ii. Creation of a New Good or Likelihood of Confusion

Defendants Lindsey and Karaoke with Andrea also argue for dismissal of Count V because no counterfeits exist here because there are no new goods being created. In response, Plaintiff contends that tracks created using media or format-shifting are actually new goods that serve as templates to the original track on the CD+G discs. Here, the Court finds there are sufficient facts alleged to support a likelihood of confusion argument, but it remains unpersuaded as to any new good being created.

It is clear to the Court that Plaintiff's "good" is the karaoke track that may be converted to another format should Plaintiff grant such authorization. Defendants Lindsey and Karaoke with Andrea's use of such converted tracks are unauthorized by Plaintiff. As discussed in the above analysis, when Defendants plays such a track, the Sound Choice trade dress is on display. Such display potentially confuses consumers into thinking the playing and display of such track was authorized by Plaintiff. Although the likelihood of consumer confusion if not yet proven, Plaintiff still states claims that are plausible to

survive a motion to dismiss. See *Iqbal*, 556 U.S. at 678 (an allegation need only be plausible, not probable, to survive a motion to dismiss).

### iii. Whether the Purported Trade Dress is Functional

Lindsey and Karaoke with Andrea further allege that Plaintiff's trade dress is functional, and consequently, cannot be protected. Plaintiff re-alleges its trade dress' non-functionality, arguing it meets both the "traditional" and "competitive necessity test" outlined in *Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197 (11th Cir. 2004).

To prevail on a trade dress claim, there must be a finding that "(1) the trade dress of the two products is confusingly similar; (2) the features of the product design are primarily non-functional; and (3) the product design is inherently distinctive or has acquired secondary meaning." See *Dippin' Dots, Inc.*, 369 F.3d at 1202 (citation omitted). Under the "competitive necessity" test, "a functional feature is one the 'exclusive use of [which] would put competitors at a significant non-reputation-related disadvantage.'" *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32 (2001) (quoting *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 165 (1995)).

The features that must be analyzed in this case are "(1) the use of particular typeface, style, visual arrangement in displaying the lyrics; (2) the Sound Choice Marks; and (3) the use of particular styles in displaying entry cues for singers, namely a series of vanishing rectangles to indicate the cue." Plaintiff contends the individual and collected elements of the trade dress have acquired secondary meaning visually. Remembering that Plaintiff need only bring a claim that entitles it to show evidence, the Court reiterates that Plaintiff states a plausible claim at this point in the proceedings. See *Iqbal*, 556 U.S. at 678 (an allegation need only be plausible, not probable, to survive a motion to dismiss).

Consequently, Plaintiff alleges a trade dress violation sufficient to withstand a motion to dismiss.

### B. Counts VI (Federal Unfair Competition), VII (FDUTPA), and VIII (Common Law Unfair Competition)

Lindsey and Karaoke with Andrea argue that Counts VI and VIII (the unfair competition claims) fail for many of the same reasons Count V fails as the Defendants do not compete with Plaintiff in the market for karaoke tracks, and do not sell competing products. In addition, Defendants allege that the broad allegations of unfair competition should be dismissed because the deception must proximately cause Plaintiff's damages, which it has not done in this case.

While Lindsey and Karaoke with Andrea concede that unfair competition does not require direct competition, they essentially argue there is no nexus to tie them to damages. According to Defendants, their unauthorized Sound Choice branded karaoke tracks may have caused Defendants to potentially charge less to venues and consequently, such action might have caused venues to forego hiring other jockeys that may have charged more because of costs associated with legitimate purchases of Sound Choice branded tracks. But, Lindsey and Karaoke with Andrea contend this causal link is too long to be close or proximate to any loss Plaintiff suffered. Plaintiff responds, asserting its claims for FDUPTA and common law unfair competition are properly pled given Lindsey and Karaoke with Andrea's use of its counterfeit karaoke tracks.

The Florida Deceptive and Unfair Trade Practices Act (FDUPTA) gives rise to claims that mirror claims brought under Section 43(a) of the Lanham Act. For the same reasons this Court declined to dismiss Plaintiff's claims brought under Section 43(a) of the Lanham Act (Count V), it similarly declines to dismiss Plaintiff's FDUPTA and unfair

12

competition claims as these claims are plausibly pled as discussed *supra*. *See John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 981 (11th Cir. 1983) (where an action for trademark infringement supports an action for unfair competition).

## II. Claims Against Defendant G&W

Defendant G&W argues that dismissal of the claims is appropriate as Plaintiff has not alleged facts sufficient to establish contributory or vicarious liability for the acts of G&W in connection with the alleged unauthorized copying of its intellectual property. Plaintiff responds that G&W supplied the necessary marketplace for the utilization of the infringed goods' use for which G&W benefited. The Court agrees with Plaintiff.

Courts have found venues liable for their involvement in trademark infringement in connection with the performance of unauthorized tracks. *See Slep-Tone Entertainment Corp. v. Lewis*, Case No. 8:11-cv-1595, Doc. #30-1. "[A] contributory infringement claim requires, at a minimum, both an allegation of a direct infringement by a third party, and an allegation of an intentional or knowing contribution to that infringement by the defendant. *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1245 (11th Cir. 2007) (citing *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850 (1982)). Vicarious liability for trademark infringement is a viable cause of action which "requires a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." *RGS Labs. Int'l, Inc. v. The Sherwin-Williams Co.*, No. 09-14242-CIV, 2010 WL 317778, at *3 (S.D. Fla. Jan. 11, 2010).

Here, Plaintiff has adequately pled direct infringement by Lindsey and Karaoke with Andrea, and that G&W made intentional and knowing contributions by helping to host and supplied the venue to market the infringing product to its customers. In addition, Plaintiff has alleged that G&W had control over how Lindsey and Karaoke with Andrea was to perform karaoke services at the establishment. This is enough to state a plausible claim, accepting all facts as true at the motion to dismiss stage. *See Mini Maid Servs., Co. v. Maid Brigade Sys., Inc.*, 967 F.2d 1516 (11th Cir. 1992) (noting that when a party participates in a scheme of trademark infringement, it is liable as a contributory infringer). G&W also argues that Plaintiff cannot establish the liability of the other Defendants as karaoke operators, therefore you cannot hold G&W liable. As discussed above, Plaintiff's claims against Lindsey and Karaoke with Andrea are plausibly pled.

Accordingly, it is now

**ORDERED:**

(1) Defendants Eric Lindsey and Karaoke with Andrea, LLC's Motion to Dismiss (Doc. #18) is **DENIED**.

(2) Defendants George and Wendy's Tropical Grill, LLC's Motion to Dismiss (Doc. #25) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 6th day of March, 2017.

*/s/ Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record